# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 13 |
| MICHAEL A. KING<br>LINDA M. KING | |
| | Case No. 05-37043 |
| Debtor(s). | |

## OPINION

This case presents the issue of whether debtors, who had above-median income at the time that their Chapter 13 petition was filed, may, post-confirmation, reduce their plan duration to a period of less than sixty months without also providing for full repayment to unsecured creditors.

## FACTS

Debtors Michael and Linda King ("Debtors") filed a Chapter 13 petition on December 8, 2005. Because their income at filing exceeded the applicable median family income in Illinois, debtors were required to propose a sixty-month plan.[1] Their Second Amended Plan, which was confirmed on August 11, 2006, provided that debtors were to pay $205.00 per month for seven months and then $325.00 per month for the balance of the 60-month case. The confirmed plan also proposed to pay $12,300.00 to unsecured creditors, which represented less than 100% repayment.

On September 21, 2009, the debtors filed amended Schedules I and J, which reflect a decrease in their disposable income. The debtors also filed a Third Amended Plan which proposes to shorten the plan duration from 60 months to 44 months. Under the amended plan,

---

[1] *See* 11 U.S.C. § 1325(b)(4); *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007).

1

debtors propose to pay a total of $13,703.20 to the Trustee through September 2009, with a minimum payment to unsecured creditors of $8,151.52. Upon approval of the amended plan, the debtors would then receive a Chapter 13 discharge. The Chapter 13 Trustee objects, arguing that the requirements for confirmation set forth in 11 U.S.C. § 1325(b) apply to post-confirmation modifications, and, therefore, the debtors may not amend their plan to provide for a duration of less than sixty months unless they also provide for 100% payment to their unsecured creditors.

## DISCUSSION

### *The "Applicable Commitment Period" and Confirmation Requirements*

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the Bankruptcy Code required that in order to be confirmed, a Chapter 13 plan had to be proposed for a minimum duration of three years unless unsecured claims were paid in full in a shorter period of time.[2] 11 U.S.C. § 1325(b)(1) (2004). This test, commonly known as the "best efforts test," required that debtors who were not proposing 100% repayment to unsecured creditors at least make their best effort toward payment for a period of three years. BAPCPA, however, substantially amended § 1325(b)(1). Under the new Act, the reference to a three-year repayment period was eliminated and replaced with the phrase "applicable

---

[2]Section 1325(b)(1) provided as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (2004).

commitment period." Section 1325(b)(1) now states:

> If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). The "applicable commitment periods" are set forth in § 1325(b)(4). For above-median income debtors, the applicable commitment period is five years unless the plan proposes to pay all allowed unsecured claims in full over a shorter period of time. The applicable commitment period for below-median income debtors is three years. 11 U.S.C. § 1325(b)(4)(A)(ii).[3]

---

[3]Section 1325(b)(4) states, in pertinent part:

(A) subject to subparagraph (B), [the applicable commitment period] shall be–

> (i)  3 years; or
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–
> > (I)   in the case of a debtor in a household of 1 person, the median family income of the appliable State for 1 earner;
> > (II)  in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; [and]
> >                                 ****

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*

3

This Court previously discussed the applicable commitment period and plan duration in the context of confirmation in *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007). In *Nance,* the debtors, all of whom had above-median income, proposed Chapter 13 plans which were less than five years in length. In addition, none of the proposed plans provided for full payment of debtors' unsecured claims. Debtors maintained that rather than imposing a requisite plan duration, the "applicable commitment period" was merely a multiplier to be used in calculating the amount of disposable income to be paid to unsecured creditors. In rejecting this theory, this Court explained that

> [w]hile the 'applicable commitment period' certainly does function as a multiplicand for calculating the amount to be paid to unsecured creditors, the plain language of §§ 1325(b)(1)(B) and (b)(4) indicate that the 'applicable commitment period' is also a temporal concept which mandates that above-median income debtors submit their projected disposable income into the plan for a period of five years.
>
> * * *
>
> 'The essence of a [C]hapter 13 case is that the debtor has made an ongoing *commitment* to provide all disposable income over a period of time to repay creditors*.* The use of the word "commitment" within "applicable commitment period*"* . . . impl[ies] that the debtor has an ongoing obligation. With an ongoing obligation by the debtor to remain in bankruptcy for the plan term, interested parties can monitor the debtor and capture any increases in the debtor's income during that time.'

*Id.* at 369 (*quoting In re Slusher,* 359 B.R. 290 (Bankr. D. Nev. 2007)).

While there is a split of authority, the majority of bankruptcy courts have adopted this "temporal" interpretation of the applicable commitment period. *See, e.g. In re Grand*, 364 B.R. 656, 663 (Bankr. E.D. Tenn. 2007); *In re Frederickson*, 368 B.R. 825, 829-30 (Bankr. E.D. Ark. 2007); *In re Luton*, 363 B.R. 96, 101 (Bankr. W.D. Ark. 2007); *In re Slusher*, 359 B.R. 290, 305

---

11 U.S.C. § 1325(b)(4) (emphasis added).

4

(Bankr. D. Nev. 2007); *In re Cushman*, 350 B.R. 207, 212-13 (Bankr. S.C. 2006). Similarly, at least one Court of Appeals has recently held that the applicable commitment period prescribes the minimum duration of a debtor's Chapter 13 Plan. *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010). In *Tennyson*, an above-median income debtor with negative disposable income proposed a three-year Chapter 13 plan. The bankruptcy court confirmed the plan over the Trustee's objection and the district court affirmed. The Eleventh Circuit reversed the lower courts, concluding that the "applicable commitment period" is a temporal term which prescribes the minimum duration of a debtor's Chapter 13 plan. The *Tennyson* court employed a "plain meaning" interpretation of § 1325, explaining:

> '[A]pplicable' and 'commitment' are modifiers of . . . the term, 'period.' The plain meaning of 'period' denotes a period of time or duration. 'Applicable commitment period' at its simplest is a term that relates to a certain duration, and based on its presence in § 1325, it is a duration relevant to Chapter 13 bankruptcy. The modifier 'commitment' then reveals that 'applicable commitment period' is a duration to which the debtor is obligated to serve. Finally, the meaning of 'applicable' reflects the fact that there are alternate 'commitment periods' depending on the debtor's classification as an above median income debtor or a below median income debtor.

*Id*. at 877 (citations omitted). Based on its reading of the statute, as well as the legislative history of § 1325, the court concluded that "the 'applicable commitment period' is a temporal term that prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan, and that "[t]he only exception to this minimum period [is] if unsecured claims are fully repaid . . . ." *Id*. at 889.

### B. Section 1329 and Post-Confirmation Plan Modification

In *Nance,* this Court examined the applicable commitment period solely in the context of plan confirmation. It did not address whether, pursuant to 11 U.S.C. § 1329, debtor may subsequently modify their plan to provide for a plan duration less than the prescribed

commitment period. Post-confirmation modification of a Chapter 13 plan is controlled by § 1329 of the Bankruptcy Code. It states, in pertinent part:

> (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
>
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>> (2) extend or reduce the time for such payments; [or]
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .
>
> * * *
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
>> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under § 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the Court, for cause, approves a longer period, but the Court may not approve a period that expires after five years after such time.

11 U.S.C. §1329(a), (b), (c)..

Debtors posit that the plain language of § 1329(a)(2) permits debtors to shorten the length of their Chapter 13 Plan and that such modifications are not subject to the requirements of 11 U.S.C. § 1325(b). Essentially, they argue that because § 1325(b) is not specifically enumerated in § 1329(b)(1), its requirements are inapplicable to post-confirmation plan modification and, therefore, debtors may shorten the duration of their confirmed plan at any time, regardless of whether unsecured creditors are paid in full. This Court disagrees.

Section 1329(a)(2) of the Bankruptcy Code permits debtors to reduce the duration of their confirmed Chapter 13 Plan subject to the requirements of §§ 1322(a), 1322(b), 1323(c), and

6

1325(a).  11 U.S.C. § 1329(b)(1).  Admittedly, § 1325(b) is not specifically referenced. However, it is incorporated into § 1329(b) by the express language of § 1325(a).  The first clause of § 1325(a) states that the Court shall confirm a plan *"[e]xcept as provided in subsection (b)."*  11 U.S.C. § 1325(a) (emphasis added).  Under the plain language of this clause, the requirements of § 1325(b) are *necessarily* incorporated into § 1325(a), and, therefore, are also included in the modification requirements of § 1329(b)(1).  As the Court explained in *In re Keller*, 329 B.R. 697 (Bankr. E.D. Cal. 2005):

> The omission of § 1325(b) from §1329(b) should not be taken to mean that § 1325(b) is not applicable to modified plans.  Section 1329(b) requires that a modified plan comply with §1325(a).  Section 1325(a), in turn, provides that 'except as provided in subsection (b), the court shall confirm a plan if' the six requirements of sections 1325(a)(1)–(a)(6) are satisfied.
>
> * * *
>
> The cross-reference in § 1325(a) to § 1325(b) suggests *that subsection (b) comes into play whenever subsection (a) is applicable.*

*Id.* at 702 (emphasis added).

Further, a careful reading of § 1329 reveals that § 1325(b)(1)(B) *is* specifically referenced in § 1329(c), where the applicable commitment period under the original confirmed plan is used as the maximum measure of plan duration.  Thus, the concept of the applicable commitment periods required under § 1325(b) did not vanish under § 1329.  Accordingly, the Court finds that the modification provisions of § 1329 are subject to the requirements of §§ 1325(a) *and* (b).

In support of their position, the debtors rely on a line of cases which have expressly held that §1325(b) does not apply to § 1329 plan modifications.  *In re Sunahara*, 236 B.R. 768, 781 (9th Cir. B.A.P. 2005); *In re McNully*, 398 B.R. 590, 593 (Bankr. N.D. Ohio 2008); *In re Young*, 370 B.R3. 799, 802 (Bankr. E.D. Wis. 2007); *In re Ewers*, 366 B.R. 139, 142-43 (Bankr. D. Nev.

7

2007). These courts have reasoned that since § 1325(b) is not expressly listed in § 1329(b)(1), its requirements are inapplicable in the context of plan modification. However, in order to reach this conclusion, *Sunahara* and its progeny appear to have summarily "read out" the qualifying clause of § 1325(a) that references § 1325(b) without explanation.[4] It is a fundamental principal of statutory construction that "'effect must be given, if possible, to every word, clause and sentence of a statute . . . so that no part will be inoperative, superfluous, void, or insignificant.'" *Indianapolis Power and Light Co. V. I.C.C.*, 687 F.2d 1098, 1101 (7th Cir. 1982) (*quoting In re Surface Min. Regulation Litigation*, 627 F.2d 1346, 1362 (D.C. Cir. 1980) (internal citations omitted)). Here, the qualifying phrase in question is integrally related to the requirements of § 1325(a) itself and, therefore, the Court must give it meaning. Section 1325(a) unequivocally states that its provisions are subject to the restrictions of § 1325(b). Therefore, by incorporation, the provisions of § 1325(b) also apply to § 1329.

Further, even if this Court were to find that § 1325(b) is not incorporated by reference into § 1329 through the preface to § 1325(a), plan modifications would still be subject to its requirements by virtue of 11 U.S.C. § 1325(a)(1), which requires that a plan comply with the provisions of Chapter 13 and other applicable provisions of the Bankruptcy Code.[5]

An interpretation of § 1329 that includes § 1325(b) is consistent with the Court's ruling in *In re Nance*. As discussed above, *Nance* requires as a condition of confirmation that debtors

---

[4] As the *Keller* court noted, "The panel in *Sunahara* in effect interpreted the first phrase in section 1325(a) as if it read '*if* subsection (b) applies.'" 329 B.R. at 702 (emphasis added).

[5] Section 1325(a)(1) of the Bankruptcy Code states:

(a) Except as provided in subsection (b), the court shall confirm a plan if–
    (1) the plan complies with the provisions of this chapter and with
    the other applicable provisions of this title.

11 U.S.C. § 1325(a)(1).

devote their disposable income to the plan for a *minimum period of time* – i.e. their applicable commitment period. The applicable commitment period is not merely a multiplicand to be used in calculating the debtor's disposable income but, rather, dictates the requisite plan length  To allow debtors to subsequently reduce their plan duration without providing full payment to unsecured creditors would be directly contrary to the reasoning of *Nance* and would, effectively, abrogate its utility. There would be little point in requiring an above-median income debtor to propose a five-year plan for purposes of confirmation if that same debtor could simply turn around and modify their plan to provide for a lesser term.

Further, the imposition of a fixed, minimum duration for both Chapter 13 plan confirmation and modification is harmonious with pre-BAPCPA practice. Prior to the enactment of BAPCA, a debtor rarely was permitted to exit bankruptcy prior to the expiration of 36 months. 11 U.S.C. § 1325(b)(1)(B) (2004). Although § 1325(b) now employs different terminology, it appears from the language of this section that Congress simply substituted an "applicable commitment period" for the previously mandated three-year repayment term. Section 1325(b)(4)(B) expressly states that a debtor may propose a plan that is less than three or five years, whichever is applicable, *only* if unsecured creditors are paid in full. "Like the 'best efforts' requirement under prior law, § 1325(b)(4)(B) imposes a minimum plan duration, unless full repayment is made to unsecured creditors in a shorter time. *Nance*, 371 B.R. at 370. As this Court noted in *Nance*, BAPCPA obviously precipitated many changes in Chapter 13 practice. "However, this Court does not believe that the elimination of a minimum plan length in cases where a debtor is not proposing to pay 100% to their unsecured creditors is one of those changes." *Id.*[6]

---

[6]Debtors' interpretation, too, would render § 1325(b)(4)(B) superfluous. There would be no point in requiring a debtor to remain in bankruptcy until their unsecured creditors were paid

9

Finally, an interpretation of § 1329 which imposes the temporal requirements of § 1325(b) is the only construction which gives meaning to § 521(f). Section § 521(f) allows the Court and other parties in interest to monitor a debtor's financial situation throughout the bankruptcy and to seek modification of the plan pursuant to § 1329 if changes in the debtor's circumstances so warrant. The interplay between §§ 1329, 1325(b), and 521(f) of the Bankruptcy Code was examined by the United States Bankruptcy Court for the District of Nevada in *In re Slusher*:

> Section 1329 provides a process for any interested party to seek modification of the chapter 13 plan after confirmation but 'before completion of payments' under the plan. 11 U.S.C. § 1329(a). This section is bolstered by other financial reporting requirements added in BAPCPA, such as Section 521(f)'s requirement that the debtor submit annual tax returns on request to any interested party, allowing those parties to determine if the debtor's financial circumstances have changed sufficiently to justify seeking modification. But if the debtor manages to produce a lump-sum payoff to the trustee before the trustee or another interested party seeks modification, all interested parties could be barred at the time from modifying the plan. Once his plan is confirmed, a debtor could simply pay off the remaining monetary balance through a refinancing of a homestead interest or some other exempt source, obviating the need for further financial review and preventing interested parties from seeking modification based on the changed circumstances . . . . 'This result would be of particular benefit to wealthy debtors who might have exempt reserves, such as IRAs, from which to fund immediate completion of a chapter 13 plan upon confirmation with no regard to future increases in income.'"

*Slusher*, 359 B.R. at 304-05. *See also Nance*, 371 B.R. at 371. The restrictive reading of § 1329 advanced by the debtors would not only render § 521(f) virtually meaningless, but could also lead to the inequitable situation where a debtor, in anticipation of receiving increased income, could simply pay off his or her case, thus depriving unsecured creditors of the benefit of

---

in full, if they were free to leave bankruptcy at any time post-confirmation, regardless of whether their unsecured creditors had been paid anything at all. Like the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998), this Court is "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."

the debtor's improved financial circumstances.

Debtors respond that such concerns could be mitigated by imposing a broad "good faith" standard on all proposed plan modifications. They assert that Congress intentionally omitted § 1325(b) from § 1329(b) because it "assume[d] that the lower courts would use their discretion to determine whether an amended plan provided payments demonstrating fundamental fairness with creditors." Debtor's Consolidated Brief in Opposition to the Trustee's Amended Objections to Confirmation at 12-13. This hypothesis, however, is not supported by the legislative history of BAPCPA. The congressional record, while scant, reveals that two of Congress' primary objectives in enacting bankruptcy reform legislation were to (1) *limit* judicial discretion in determining the appropriate amount to be repaid through bankruptcy and (2) maximize recovery to unsecured creditors. H.R. REP. NO. 109-31, Pt. 1, at 2 (2005) U.S. CODE CONG & ADMIN. NEWS 2005, pp. 88-89. *See also Nance*, 371 B.R. at 366 ("it is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and the calculation methods for determining 'projected disposable income' that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas"); *In re Wisham*, 416 B.R. 790, 798 (Bankr. M.D. Fla.. 2009) ( the court "recognize[d] the stated desire of Congress to maximize the funds that are paid to unsecured creditors in bankruptcy" and that the goal of BAPCPA was to "ensure that debtors repay creditors the maximum they can afford"). Clearly, neither of these objectives are advanced under the debtors' rendering of § 1329(b).[7]

---

[7]As a practical matter, it is important to note that a "good faith" standard also could not be monitored once a case is closed. For example if a debtor's confirmed plan required payments of $100.00 per month and the debtor subsequently filed a plan modification to pay the balance of $2,400.00 in month 36, there would be no way to monitor the windfall the debtor received in month 44. The case would be closed, the debtor discharged, and the provisions of 11 U.S.C. § 521(f) would be unenforceable. This scenario confirms the reason why the applicable commitment period is a necessary plan component for modifications

11

Debtors theorize that incorporating the provisions § 1325(b) into § 1329 would essentially make any type of plan modification impossible for above-median income debtors, as debtors would be subject to both the temporal requirements of § 1325(b)(4), as well as the disposable income requirements of § 1325(b)(1)(B). Section 1325(b)(1)(B) provides, in relevant part, that a Chapter 13 Plan must provide for payment of all of the debtor's projected disposable income "to be received in the applicable commitment period beginning on the date the first payment is due under the plan. . . ." 11 U.S.C. § 1325(b)(1)(B). Debtors argue that an above-median income debtor would be precluded from ever modifying their plan because five years from the "date the first payment is due" under the modified plan would extend the plan's duration beyond the limitations imposed by 11 U.S.C. §§ 1322(d) and 1329(c).[8] *See In re Forbes*, 215 B.R. 183, 192 (B.A.P. 8th Cir. 1997) .

Neither, debtors argue, can the problems created by incorporating § 1325(b)(2) be corrected by simply construing the "date the first payment is due" to mean the date that the first payment is due under the original Chapter 13 plan. Debtors maintain that they would be precluded from modifying their plan in order to account for a change in circumstances because they would necessarily be placed in the same financial position that they were in at the time of confirmation. Relying on the court's reasoning in *In re York*, 415 B.R. 377, 382 (Bankr. W.D. Wis. 2009), debtors assert that

> [t]he application of § 1325(b) to motions [to modify plan] would effectively bar all modification motions premised on the [changed] income of an above-median debtor. The term 'disposable income' is defined by reference to the term 'current monthly income.' That term, in turn, is defined as the debtor's income received in the six month period preceding the filing of a petition. A strict application of § 1325(b) to a modification motion would send the parties back to the argued confirmation status of the debtor and preclude any changes in the debtor's income.

Debtors' Consolidated Brief in Opposition to Trustee's Amended Objections to Confirmation at p.

---

[8] Both §§ 1322(d) and 1329(c) provide that the duration of a Chapter 13 bankruptcy case may not exceed five years.

12

17 (*quoting In re York*, 415 B.R. 377, 382 (Bankr. W.D. Wis. 2009)).

The Court disagrees. It is an axiom of statutory construction that a court must enforce a statute according to its terms unless "literal interpretation leads to an outcome that is patently contrary to congressional intent or that produces an absurd result." *In re Ybarra*, 359 B.R. 702, 707 (Bankr. S.D. Ill. 2007). *See also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). Debtors' interpretation is certainly plausible under a literal reading of § 1325(b) and, frankly, illustrates a serious conflict within BAPCPA. It seems improbable to this Court, however, that Congress intended to preclude debtors from *ever* modifying their plan payments based on changed financial circumstances. Such an approach would render § 1329 entirely meaningless and would be inconsistent with the interpretation of "projected disposable income" advanced by the Supreme Court in *Hamilton v. Lanning*.[9] There is, however, another way to read § 1325(b) which reconciles, to the extent possible, the requirements of § 1325 with the modification rights provided in § 1329. The starting point for this analysis is 11 U.S.C. § 1329(b)(2), which provides that a modified plan "becomes the plan, unless . . . such modification is disapproved." Reading this section in conjunction with § 1325(b) produces the augmented version of § 1325(b) set forth below:

> (b)(1) If the Trustee or the holder of an allowed unsecured claim objects to *[modification]* of the plan, then the court may not approve the *[modified]* plan unless as of the effective date of the *[modified]* plan–
>
> * * *
>
> (B) the *[modified]* plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period *([which]* begin[s] on the date that the first payment is due under the *[original]* plan*)* will be applied to make payments to unsecured creditors under the *[modified*] plan.

Reading § 1325(b)(2)(B) in this manner would eliminate at least some of the debtors' concerns.

---

[9] 130 S.Ct. 2464 (2010). *See infra* p. 14-15 for a detailed discussion of the *Lanning* Court's interpretation of "projected disposable income."

-13-

First, the effective date of the applicable commitment period would be established at the time payments are due under the *original* plan and would not "restart" every time a plan was modified. Further, disposable income would be examined as of the date of the modified plan, thereby allowing debtors to adjust their remaining plan payments in response to changes in their financial circumstances.[10]

It is important to note that the hypothetical scenario posed by the debtors is premised on a strict interpretation of the term "projected disposable income"– i.e., that a debtor's projected disposable income is based solely on the debtor's income during the six-month period immediately prior to the filing of the bankruptcy petition. This "mechanical" approach was expressly rejected by the United States Supreme Court in *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010). Instead, the *Lanning* Court adopted a more "forward-looking" approach, holding that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In reaching its conclusion, the Supreme Court focused on the meaning of the word "projected," noting that "in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself." *Id.* at 2471. As the Court explained:

> On the night of an election, experts do not 'project' the percentage of the votes that a candidate will receive by simply assuming that the candidate will get the same percentage as he or she won in the first few precincts. And sports analysts do not project that a team's winning percentage at the end of new season will be the same as the team's winning percentage last year or the team's winning percentage at the end of the first month of competition. *While a projection takes past events into account, adjustments are often made based on other factors that may affect the final*

---

[10] The Trustee advanced a similar interpretation of § 1325(b)(2)(B) in his reply brief. *See* Trustee's Reply Brief at 3. It should be noted that the Trustee agrees with the debtors that the intent of § 1329 "is to allow upward or downward adjustment of plan payments in response to changes in a debtor's circumstances which substantially affect the ability to make future payments." *In re Trumbas*, 245 B.R. 764, 767 (Bankr. D. Mass. 2000).

*outcome.*

*Id.* at 2471-72.  (emphasis added).

Although *Lanning* arose in the context of confirmation rather than plan modification, the Court believes that its reasoning is still instructive in that it grants the bankruptcy court discretion to make adjustments when there are significant changes in a debtor's financial circumstances.  This Court believes that a reading of § 1325 which permits the court to look at changes in the debtor's income at the time that a proposed modified plan is filed is consistent with this "forward-looking" approach.  However, while changes in a debtor's financial circumstances may allow for adjustments to a debtor's plan payments, it does not necessarily follow that there must also be a reduction in the plan's duration. A careful examination of the structure of § 1325(b)(1)(B) reveals that the word "projected" modifies only the phrase "disposable income."  There is, however, no corresponding modifier on the phrase "applicable commitment period."  Hence, while the Court is not confined to a static definition of disposable income, there is no such flexibility when it comes to determining the length of the plan.

Admittedly, requiring above-median income debtors to remain in bankruptcy for their entire commitment period– while also allowing them to adjust their plan payments based on changed financial circumstances--may result in situations where certain debtors end up paying very little to the Trustee for extended periods of time.   However, if the Court were to allow above-median income debtors to simply exit bankruptcy upon payment of their secured claims, unsecured creditors would be deprived of the opportunity to capitalize on any subsequent increases in the debtors' income.

Further,  above-median income debtors are afforded certain advantages in calculating their monthly disposable income that are not extended to below-median income debtors. Above-median

-15-

income debtors are permitted to take additional deductions on their Form B22C for such things as housing, transportation, and other necessary expenses. This has the effect of reducing their disposable income and, accordingly, the amount that they are required to pay to the Trustee each month. In exchange for this benefit, however, above-median income debtors are expected to remain in bankruptcy for a longer period of time.

Based on the foregoing, this Court concludes that plan modifications are subject to the requirements of § 1325(b) and, therefore, debtors may not modify their plan to provide for a payment term less than their applicable commitment period unless unsecured creditors are paid in full.


ENTERED: October 20, 2010

                                                  /s/ Laura K Grandy
                                        UNITED STATES BANKRUPTCY JUDGE